IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN KAULICK,

      Plaintiff,                    No. 2:09-cv-2611 GEB KJN P

    vs.

M. MARTEL, et al.,

      Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding without counsel and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On August 23, 2010, defendants filed a motion to dismiss on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing the instant action, that plaintiff's claims are barred by the statute of limitations, and that plaintiff has failed to state a cognizable civil rights claim. Plaintiff filed an opposition on September 29, 2010. Defendants filed a reply on October 18, 2010. For the reasons set forth below, the undersigned recommends that defendants' motion be granted and this case dismissed.

II. Motion to Dismiss

        Background

        Plaintiff is proceeding on his complaint filed March 24, 2010, against defendants

1

M. Cherry, M. Hamilton, L. Martinez, and L. B. Reaves (collectively "defendants"). (Dkt. No. 15.) Plaintiff alleges defendants have wrongfully and continuously applied an "R" suffix designation to his file since January 4, 2001, in violation of his Fifth and Fourteenth Amendment rights. Plaintiff also challenges the 2007 re-designation of the "R" suffix. Plaintiff seeks declaratory and injunctive relief, costs, and any other relief the court deems just. (Dkt. No. 15 at 16.)

<u>The "R" Suffix</u>

An inmate's housing assignment and the degree of staff supervision he or she will require are identified through his or her custody designation pursuant to California Code of Regulations, Title 15, § 3377.1. To further ensure the safety and security of other inmates, correctional personnel, and the general public, the letter "R" is attached as a suffix to the custody classification of inmates who have a history of specific sex offenses listed under California Penal Code § 290. Cal. Code Reg. title 15, § 3377.1(b).

<u>Statute of Limitations - 2001 Application of "R" Suffix</u>

Defendants first argue that plaintiff's claims are barred by the statute of limitations. "Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' . . . " <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999) (citation omitted).

California law determines the applicable statute of limitations in this § 1983 action. <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999). Until December 31, 2002, the applicable state limitations period was one year. See <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Proc. Code § 340(3) (West Supp. 2002); <u>see also</u> <u>Maldonado v.</u>

////

////

////

Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).[1] Effective January 1, 2003, the applicable California statute of limitations was extended to two years. See Jones, 393 F.3d at 927 (citing Cal. Civ. Proc. Code § 335.1). However, the new statute of limitations period does not apply retroactively. Maldonado, 370 F.3d at 955. California law also tolls for two years the limitations period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1.[2] The Ninth Circuit has held that a limitations period may be tolled while a claimant pursues an administrative remedy. Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001).

Plaintiff first became aware of the alleged wrongful application of the "R" suffix designation at High Desert State Prison ("HDSP") on January 4, 2001, where an initial classification committee found imposition of the "R" suffix designation was appropriate "based on Info in POR[3] showing the defendant's intent to rape the victim." (Dkt. No. 15 at 58.) Because this decision was rendered on January 4, 2001, the applicable statute of limitations period was one year because it precedes the 2003 extension of the limitations period. Maldonado, 370 F.3d at 955.

Plaintiff is entitled to tolling of the statute of limitations period for an additional two years. Jones, 393 F.3d at 927 n.5. Therefore, plaintiff was required to bring his civil rights claims on or before January 3, 2004. Plaintiff is entitled to tolling from March 30, 2001, to the date his request for second level review was decided, because he was attempting to exhaust the administrative grievance process. However, plaintiff concedes he did not complete the grievance

---

[1] Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run. Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Id. (citations omitted).

[2] "The California courts have read out of the statute the qualification that the period of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling." Jones, 393 F.3d at 927 n.5 (citations omitted).

[3] It appears "POR" stands for the Probation Officer's Report.

1 process through the required third level of review. Plaintiff did not file the instant action until
2 September 14, 2009. (Dkt. No. 1 at 13.) The brief period plaintiff spent pursuing the first and
3 second levels of review are insufficient to cover the eight year period between the filing of his
4 grievances and the filing of the instant action.

5        Plaintiff argues he had to wait until he had the corrected minute order he believed
6 he needed to demonstrate he was not convicted of a sex offense before he could complete
7 exhaustion of this issue. However, this minute order was not required. The judgment form held
8 by prison officials clearly demonstrated plaintiff had only been convicted of false imprisonment.
9 Prison officials obtained the information used to affix the "R" suffix designation from the
10 probation officer's report that described, in detail, the circumstances surrounding plaintiff's
11 crime. The minute order had no impact on the facts of the crime; thus, receipt of this document
12 was of no consequence.

13        But even assuming, arguendo, the court were to grant plaintiff additional time for
14 the receipt of this corrected minute order, it would not be sufficient to toll the statute of
15 limitations period. Federal courts generally apply the forum state's law regarding equitable
16 tolling. Fink, 192 F.3d at 914. Under California law, a plaintiff must meet three conditions to
17 equitably toll a statute of limitations: (1) he must have diligently pursued his claim; (2) his
18 situation must be the product of forces beyond his control; and (3) the defendants must not be
19 prejudiced by the application of equitable tolling. See Hull v. Central Pathology Serv. Med.
20 Clinic, 28 Cal. App. 4th 1328, 1335, 34 Cal. Rptr. 2d 175 (1994).

21        Plaintiff claims prison officials received the corrected minute order in 2002.
22 However, plaintiff did not renew his efforts to exhaust this claim until 2006. Plaintiff has failed
23 to explain this four year delay. On this record, plaintiff cannot demonstrate he has diligently
24 pursued this claim. Plaintiff's claim as to the initial application of the "R" suffix designation in
25 2001 is time-barred, and defendants' motion to dismiss this action should be granted.
26 ////

<u>Challenge to 2007 Renewal of "R" Suffix Designation</u>

Defendants argue that because plaintiff first became aware of the designation in 2001, he cannot challenge the continued application of the "R" suffix designation. However, it appears the applicable regulation contemplates occasions where the application of the "R" suffix may no longer be required. For example, California Code of Regulations, title 15, § 3377.1(b)(6) states:

> If a Unit Classification Committee (UCC) finds that an inmate may no longer require an "R" suffix, the committee shall refer the case to the Institution Classification Committee (ICC) for review.

Cal. Code Reg., tit. 15 § 3377.1(b)(6). Section 3377.1(b)(8) provides:

> ICC can reverse an "R" suffix evaluation by a previous institution's ICC only if new and compelling information is obtained. Otherwise, the case shall be referred for a [Departmental Review Board "DRB"] decision.

Cal. Code Reg., tit. 15 § 3377.1(b)(6). Defendants have provided no legal authority for the position that plaintiff cannot challenge the continued application of the "R" suffix at his annual classification review. Plaintiff's challenge to the 2007 classification decision was timely brought and exhausted through the third level of review. (Dkt. No. 41 at 73.) Therefore, the court turns to defendants' motion to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>Failure to State a Claim</u>

Defendants also seek dismissal because they contend plaintiff has failed to state a cognizable civil rights claim. In response, plaintiff contends that he has a protected liberty interest in being free from the "R" suffix designation, and argues he has been deprived a center core gate pass, which causes certain job restrictions, and prevents his participation in certain programs due to the "R" suffix designation.

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. 89 (internal citations omitted).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law. These procedural guarantees apply only when a constitutionally-protected liberty or property interest is at stake. Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake); see Ingraham v. Wright, 430 U.S. 651, 672 (1977). Protected liberty interests arise from the Fourteenth

Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right. Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (describing minimum safeguards applicable before a cognizable liberty interest may be infringed, such as before withdrawing sentence credits a prisoner has already acquired).

To survive Rule 12(b)(6) review, the complaint must allege facts permitting a finding the plaintiff has a liberty interest at stake, arising from either the Due Process clause or from state-created sources. Sandin v. Conner, 515 U.S. 472, 477-78 (1995) (examining whether state prison regulations or the Due Process Clause afforded inmate a protected liberty interest that would entitle him to procedural protections before transfer into segregation); see Roth, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 482.

Changes in a prisoner's conditions of confinement can amount to a deprivation of a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty interest in question is one of real substance. Sandin, 515 U.S. at 477-78. Only in those cases where a sufficiently substantial liberty interest is at stake must the court evaluate whether the process received comported with minimum procedural due process requirements. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003), quoting Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin, 515 U.S. at 484). If the court answers the first question in the negative, the plaintiff has failed to state a section 1983 claim for a Fourteenth Amendment violation.

In order to find a liberty interest conferred by state law, the analysis focuses on the

nature of the deprivation rather than on the language of any particular regulation, to avoid involvement of federal courts in day-to-day prison management. See Sandin, 515 U.S. at 479-82, 483; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (prisoner's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed, and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). Protected liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; see also Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996) (prison classification created no "atypical and significant hardship" because it would not invariably affect the duration of the inmate's sentence) (interpreting Sandin).

      In the instant action, plaintiff urges the court to find designation with the "R" suffix and the denial of a center core gate pass to be a violation of his constitutional rights to due process, life, and liberty because he alleges he has been wrongly assigned a custody classification as a sex offender, resulting in the job and program restrictions connected with the denial of a center core gate pass. However, plaintiff cannot claim any constitutional right to a particular prison classification arising directly from the Fourteenth Amendment, as inmates have no liberty interest in custody classification decisions. Hernandez v. Johnston, 833 F.2d 1316, 1318; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). The assignment of an "R" suffix and the resulting increase in custody status and inability to work outside the prison simply do not "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997); Cooper v. Garcia, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999); Johnson v. Gomez, 1996 WL 107275, at *2-5 (N.D. Cal. 1996). Therefore, the court's threshold inquiry is whether the deprivation of the core gate pass imposed "atypical and significant hardship" implicating a protected liberty interest. If so, the court must then determine what process plaintiff was due and whether he received it. See,

1  e.g. Wilkinson v. Austin, 545 U.S. 209 (2005) (segregated confinement of indefinite duration in a
2  "supermax" prison that rendered inmates ineligible for parole consideration created a
3  combination of factors that implicated a liberty interest, but the state's informal, nonadversary
4  procedures for placement there were adequate to safeguard inmates' liberty interest in not being
5  assigned to supermax prison).

6        Plaintiff relies on Neal v. Shimoda, 131 F.3d 818, 827-28 (9th Cir. 1997) for the
7  proposition that deprivation of the core gate pass implicates a protected liberty interest.
8  However, Neal is distinguishable.  In relevant part, the court in Neal held that the state's
9  requirement that a prisoner complete a sex offender treatment program and confess to past sex
10 offenses as a precondition to parole eligibility, created a liberty interest protected by due process,
11 triggering the Fourteenth Amendment's protections.  Neal, 131 F.3d at 827 ("[T]he stigmatizing
12 consequences of the attachment of the 'sex offender' label coupled with the subjection of the
13 targeted inmate to a mandatory treatment program whose completion is a precondition for parole
14 eligibility create the kind of deprivations of liberty that require procedural protections").  The
15 "sex offender" label standing alone apparently would not have caused the court in Neal to
16 recognize a liberty interest in remaining free from that classification.  Rather, the cognizable
17 liberty interest arose only when the custody classification was coupled with the mandatory
18 treatment program which the inmate had to successfully complete before becoming eligible for
19 parole, which the court found implicated the "kind of deprivations of liberty that require
20 procedural protections."  Neal, 131 F.3d at 830; see also Cooper, 55 F.Supp.2d at 1102 (finding,
21 in consideration of the Neal authority, "the liberty interest at stake must be more than a mere 'sex
22 offender' classification," requiring in addition "some mandatory coercive treatment" associated
23 with the classification "which affects a liberty interest, such as parole").

24       Plaintiff alleges no facts from which it may be inferred that his parole eligibility or
25 good time credits or any other effect that could impact the fact or duration of his conviction and
26 sentence is implicated, nor that he is compelled to complete a sex offender program before he can

be parole-eligible, nor that he confess to past sex offenses or the like, from which a combination of factors could be found to trigger a liberty interest. Those distinctions preclude a finding that the institution's withholding of a core gate pass created a cognizable liberty interest deprivation. Plaintiff has alleged no facts to substantiate the fact or duration of his imprisonment is in any way affected by the "R" suffix attached to his custody classification.

Therefore, this court finds no basis to support a liberty interest in the core gate pass within the meaning of Sandin, and plaintiff cannot state a claim for procedural due process violations associated with deprivation of the core gate pass. Provision of the core gate pass within prisons is a matter of institutional discretion.[4] This court may not fashion a remedy in a section 1983 action without a cognizable liberty or property interest at stake. The court finds plaintiff's complaint does not allege claims upon which relief may be granted, and leave to amend would be futile; therefore, defendants' motion to dismiss should be granted, and this action should be dismissed.

### Fifth Amendment and Equal Protection Arguments

Plaintiff also contends his Fifth Amendment due process rights were violated, and claims he was denied equal protection by the application of the "R" suffix designation. First, defendants are correct that the Due Process Clause of the Fifth Amendment only applies to conduct by the federal government and not to state or local governments. Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001). Therefore, plaintiff's Fifth Amendment claims do not apply to the defendants who all work for the State of California.

Plaintiff also alleges, in conclusory fashion, that application of the "R" suffix designation violates the Equal Protection Clause. (Dkt. No. 15 at 8.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within

---

[4] Moreover, prisoners have no constitutional right to a prison job. See Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational opportunities); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (no liberty or property interest in vocational training).

its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). Plaintiff has not alleged any facts that suggest that he was treated differently from otherwise similarly situated inmates. For this reason, he has failed to state a cognizable equal protection claim.

Therefore, defendants' motion to dismiss plaintiff's Fifth Amendment and equal protection claims should be granted.

*Sua Sponte* Dismissal of Defendant Garcia

Service of process on defendant Silvia Garcia was returned unexecuted and plaintiff was granted an additional sixty days from August 25, 2010, in which to provide current information for defendant Garcia. (Dkt. No. 36.) However, because plaintiff has failed to state a cognizable civil rights claim, dismissal of defendant Garcia is also appropriate. Fed. R. Civ. P. 12(b)(6). Therefore, the August 25, 2010 order will be vacated, and the court will recommend dismissal of defendant Garcia.

IV.  Conclusion

Accordingly, this court recommends that defendants' motion to dismiss be granted, as set forth above; plaintiff's claims against defendant Garcia be dismissed for failure to state a claim; and this action be dismissed based on plaintiff's failure to state a cognizable civil rights claim. Fed. R. Civ. P. 12(b)(6).

In accordance with the above, IT IS HEREBY ORDERED that the August 25, 2010 order (dkt. no. 36) is vacated; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' August 23, 2010 motion to dismiss (dkt. no. 35) be granted;

2. Defendant Garcia be dismissed; and

3. This action be dismissed for failure to state a civil rights claim. Fed. R. Civ. P. 12(b)(6).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 22, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/kaul2611.mtd